## S11A0810. VANDALL v. THE STATE.
(717 SE2d 461)

HUNSTEIN, Chief Justice.

A jury convicted Bryan B. Vandall of the murder of thirteen-month-old Michael Bryson Youman.[1] Vandall contends that the trial court erred in interfering with his right to cross-examine a critical witness and in denying his motion for a mistrial after the State mentioned his criminal history in violation of a pretrial order. Because the trial court did not limit Vandall's cross-examination of the lead investigator and gave a curative instruction following the reference to the outstanding warrants, we affirm.

1. The evidence presented at trial shows that Vandall was caring for the three children of his girlfriend, Sarah Johnson, while she visited her grandmother at the hospital. Vandall called her at 11:17

---

[1] The crime occurred on July 27-28, 2006. Vandall was indicted in Bartow County on February 9, 2007. The jury found him guilty of malice murder and felony murder on March 17, 2008. The trial court sentenced him on March 25, 2008 to life imprisonment on the malice murder charge, and the felony murder charge was vacated by operation of law. Vandall filed a motion for new trial on April 15, 2008, which was denied on December 28, 2010. Vandall filed a notice of appeal on January 14, 2011. The case was docketed for the Court's April 2011 term and submitted for decision on the briefs.

p.m. to say that Bryson was having a seizure and called a minute later to say he had stopped breathing. Johnson called 911. The police officer who responded found the child did not have a pulse and was not breathing; a firefighter described the child as an ashy gray color, lifeless, and cold to the touch. The child did not respond to CPR and was taken to the hospital where he was pronounced dead at 12:30 a.m.

In an interview later that day, Vandall told police that he picked Bryson up after changing his diaper and the child tried pushing himself out of Vandall's arms and looked like he was having a seizure. The child's head was leaning back, his mouth was open, his eyes were rolled back in his head, and he was stiff. In a second statement, Vandall said that he had squeezed the infant "pretty hard" and "just about with all of my strength," it sounded like Bryson's back cracked, and the child went limp as Vandall ran with him to get the telephone.

The medical examiner testified that the child bled to death internally from his broken back and that the fracture would lead to severe pain, muscle spasms, seizures, stiffening up, paralysis, or passing out. He further testified that the break could not have occurred by Vandall holding the child during a seizure and is one caused by significantly more force, such as a major fall or motor vehicle crash. The doctor also determined that the victim had previously received an injury to his kidney that had started to heal, and it was not a significant contributor to the internal bleeding.

After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Vandall guilty of murder beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Vandall contends that the trial court interfered with his right to a thorough cross-examination by repeatedly interrupting and cutting short his counsel's questioning of the lead investigator, Special Agent Mitchell Jackson of the Georgia Bureau of Investigation. During the cross-examination, defense counsel attempted to show that Jackson had used intimidation and threats to pressure Vandall into changing his story from one suggesting a negligent mishandling of the child to one involving incriminating admissions that the State used to establish criminal intent. Vandall cites four separate incidents in which the trial court intervened in the cross-examination of the witness, telling defense counsel to move on or restating the questions asked. At the end of Jackson's testimony, Vandall moved for a mistrial. He argued that the trial court's actions prejudiced him and left the jury with the impression that the court was frustrated with the pace of the proceedings. The trial court

stated that its frustration was with defense counsel's inability to ask clear, succinct questions and follow the court's instructions on impeaching the witness.

The grant of a motion for mistrial is within the discretion of the trial court, and on review appellate courts will not interfere with the exercise of that discretion unless a mistrial is essential to preserve the right to a fair trial. See *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982). In this case, the trial court acted improperly in actively inserting itself into the cross-examination of the witness, expressing irritation with defense counsel's questioning of the witness, and rephrasing some of the questions asked. In addition, the judge made an inappropriate comment during a bench conference about his reasons for preferring not to work over the weekend.

These actions, however, did not deprive Vandall of the opportunity to fairly and fully present his case to the jury. Vandall does not point to any instance where he was denied the right to ask a question. The transcript shows that he was able to question the agent at length about the interrogation strategy and techniques used in the two interviews. Moreover, the trial court's reproofs were not limited solely to defense counsel. The trial judge admonished Jackson at one point that "this is not a game" and he should not evade defense counsel's questions. More importantly, the trial judge did not at any time intimate an opinion on the evidence by his comments or questioning. See *Shields v. State*, 272 Ga. 32, 34 (5) (526 SE2d 845) (2000) (trial court's examination of a witness is not cause for a new trial unless the court expresses or intimates an opinion on the facts or what has been proved or the questioning is argumentative). In the instructions to the jury, the trial judge stated that he had interjected himself at various times during the questioning of Jackson, but that the jury should not consider anything the court said or did as evidence or let the court's actions affect their view of the evidence. Because Vandall was not deprived of his right to a thorough and sifting cross-examination of the GBI agent, the trial court did not abuse its discretion in denying the motion for a new trial.

3. Vandall also contends that the trial court should have granted a mistrial after the prosecutor violated a pretrial order by asking Vandall's mother about outstanding warrants. The trial court denied the motion for a mistrial, but agreed that the question was improper and gave a curative instruction to the jury. We have previously held that curative instructions are sufficient to cure any potential prejudice that results from a witness's reference to an outstanding warrant. See *Brown v. State*, 268 Ga. 455, 456 (1) (490 SE2d 379) (1997); see also *Height v. State*, 281 Ga. 727, 729-730 (4) (642 SE2d 812) (2007) (trial court's curative instruction to disregard any evidence related to prior conduct remedied any prejudicial impact of

the officer's statement). Since the trial court immediately instructed the jury that the prosecutor's question about warrants did not establish a fact in the case and the jury should disregard the question during its deliberations, the trial court did not abuse its discretion in denying the motion for a mistrial.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 2011.

*Christopher G. Paul*, for appellant.

*T. Joseph Campbell, District Attorney, Samuel S. Olens, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.